# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| HOLLY NEWMAN,<br><br>          Plaintiff,<br><br>     v.<br><br>DIRECT ENERGY, LP,<br><br>          Defendant. | Civil Action No.: 8:21-cv-02446-GJH |

### DIRECT ENERGY'S MEMORANDUM OF LAW IN SUPPORT OF ITS
### MOTION TO DISMISS OR STRIKE CLASS ALLEGATIONS

Eric N. Heyer (D. Md. No. 17486)
Joseph A. Smith (D. Md. No. 19292)
THOMPSON HINE
1919 M Street, N.W., Suite 700
Washington, D.C. 20036-3537
Telephone: (202) 263-4128
eric.heyer@thompsonhine.com
joe.smith@thompsonhine.com

Michael D. Matthews, Jr., Esq.*
William B. Thomas, Esq.*
Diane S. Wizig, Esq.*
James M. Chambers, Esq.*
David L. Villarreal, Esq.*
MCDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2700
Houston, Texas 77002
Telephone: (713) 337-5580
matt.matthews@mhllp.com
william.thomas@mhllp.com
diane.wizig@mhllp.com
james.chambers@mhllp.com
david.villarreal@mhllp.com

*pro hac vice applications forthcoming
**ATTORNEYS FOR DEFENDANT DIRECT ENERGY, LP**

# TABLE OF CONTENTS

I. Introduction ................................................................................................................... 1

II. Procedural and Factual Background ........................................................................... 2

    A. Ms. Newman's lawyers sought to litigate her same claims in *Burk*. ................... 2

    B. Ms. Newman's lawyers try again, changing nothing but the name on the caption. ........... 4

III. Standard Of Review: The Court has authority to strike deficient class allegations at the pleadings stage pursuant to Rule 12 or Rule 23. ......................................................... 6

IV. Argument: Ms. Newman's Class Allegations are Fatally Deficient. ......................... 8

    A. Comity: The Court should strike Ms. Newman's class allegations pursuant to the Supreme Court's decision in *Smith v. Bayer*. ....................................................... 8

    B. Personal Jurisdiction: Under the Supreme Court's decisions in *Bristol-Myers Squibb* and *TransUnion*, the Court lacks personal jurisdiction for the multistate class claims. ........... 11

        1. Ms. Newman must establish a basis for personal jurisdiction for the claims of every unnamed class member. ................................................................... 12

        2. Ms. Newman cannot plead or prove a basis for personal jurisdiction with respect to the claims of the multistate class. ............................................... 15

IV. Conclusion ................................................................................................................ 16

## I.  INTRODUCTION

Plaintiff Holly Newman's lawyers tried to certify this putative class action once before. The first time, the case was called *Burk v. Direct Energy*—filed in the Southern District of Texas in February 2019 on behalf of a class that included Ms. Newman and every putative class member she seeks to represent here. After two years of intense litigation, Ms. Newman's lawyers moved to certify that class. But on September 20, 2021, Judge George Hanks denied their motion. Just four days later, Plaintiff's counsel filed this case with claims and class allegations that were simply copied-and-pasted from the *Burk* complaint into Ms. Newman's, and the class pursued is simply a subpart of the nationwide class that was denied certification in *Burk*. In other words, the class allegations in this case are merely an echo of the ones that failed in *Burk*.

But that is not to say that this case is on equal footing with *Burk*. Rather, Ms. Newman's putative class claims are weaker than *Burk's* in two key respects, and the Court should dismiss or strike her class allegations now for both reasons.

First, as a matter of comity, the denial of class certification in *Burk* is not subject to relitigation simply because there is a new name on the caption. Under the Supreme Court's decision in *Smith v. Bayer*, this Court should strike Ms. Newman's class allegations out of comity to Judge Hanks's class certification decision that was rendered in *Burk*. Indeed, allowing Ms. Newman to proceed on her putative class claims would endorse the obvious "effort by plaintiffs' counsel to make an end-run around [an] adverse ruling by attempting to certify the same classes here with different class representatives" and unnecessarily waste the parties' and the Court's resources for years. *Ott v. Mortg. Invs. Corp. of Ohio*, 65 F. Supp. 3d 1046, 1068 (D. Or. 2014).

Second, Ms. Newman's putative class faces a new jurisdictional bar. In *Burk*, the court exercised general personal jurisdiction because the Southern District of Texas encompasses Direct

Energy's Houston headquarters. This Court cannot do the same, so Ms. Newman has the burden to establish (or at least allege) a basis for specific personal jurisdiction. Under the Supreme Court's decisions in *Bristol-Myers Squibb* and *TransUnion LLC v. Ramirez*, that burden extends beyond Ms. Newman's individual claims and requires her to make a jurisdictional showing for each and every member of the putative national class. Ms. Newman has not met that burden, and she cannot possibly do so with respect to non-Maryland class members. Thus, the Court's jurisdiction only extends to Ms. Newman's individual claims, but not the putative class defined in the complaint.

The Court should dismiss or strike Ms. Newman's class allegations for these two reasons.

## II. PROCEDURAL AND FACTUAL BACKGROUND

**A.   Ms. Newman's lawyers sought to litigate her same claims in *Burk*.**

*Burk v. Direct Energy* was filed as a putative class action in the Southern District of Texas in February 2019. *See* Ex. 1, Burk Compl. The *Burk* complaint accused Direct Energy of violating the Telephone Consumer Protection Act ("TCPA") by "making calls to Plaintiff's and Class Members' cellular telephones using an 'artificial or prerecorded voice' . . . without Plaintiff's and Class Members' 'prior express consent.'"[1] *Id.* at ¶ 2. Based on those allegations, the named plaintiff pleaded two claims for relief, *see id.* at ¶¶ 47–50; *id.* at 51–54. In addition to pursuing the named plaintiff's individual claims, the *Burk* complaint sought to represent a class that included both Ms. Newman and all of the putative class members encompassed within Ms. Newman's proposed class definition. *See id.* at ¶ 35 (defining a class that includes "[a]ll persons in the United

---

[1] The *Burk* complaint also accused Direct Energy of using "an 'automatic telephone dialing system ("ATDS")." Ex. 1, Burk Compl. at ¶ 2. However, following the Supreme Court's decision in *Facebook v. Duguid*, 141 S. Ct. 1163 (2021), "Ms. Burk withdrew her allegations based on Direct Energy's use of an autodialer." Response to Pre-Motion Letter at 2, *Burk v. Direct Energy*, Case No. 4:19-cv-00663 (S.D. Tex. April 26, 2021), ECF No. 137. Accordingly, those abandoned claims are of no relevance here.

2

States to whom Defendant placed an artificial or prerecorded voice call . . . from four years prior to the date of this complaint through the date of class certification"); Newman Compl. at ¶¶ 14–15 (alleging Ms. Newman is a person in the United States who received a prerecorded call from Direct Energy in early 2019), ECF No 1.

Because *Burk* was filed in the federal district where Direct Energy's headquarters is located, personal jurisdiction was uncontested. What followed was two and a half years of complex, expensive, and incredibly time-consuming litigation. The parties generated dozens of substantive motions, responses, replies, surreplies, supplemental briefs, and evidentiary submissions,[2] all of which required the court's thoughtful consideration. The court also held seventeen hearings or court conferences with the parties,[3] and the parties conducted massive party, third-party,[4] and nonparty discovery that is not fully reflected in the public docket. *See* S.D. Tex. R. 5.4 (providing that "discovery material shall not be filed with the clerk").

In December 2020, Plaintiff's counsel filed a motion seeking to certify a nationwide class of persons who allegedly received telemarketing calls from Direct Energy between December 1, 2018 and April 30, 2019. *See* Ex. 2, *Burk v. Direct Energy, LP*, No. 4:19-CV-663, 2021 WL 4267146, at *1 (S.D. Tex. Sept. 20, 2021) (quoting Pl.'s Mot. for Class Cert.). Plaintiff Holly

---

[2] *See* Ex. 3, Burk Docket Sheet at Entry No. 33 (motion for preliminary injunction); *id.* at Entry Nos. 81, 81-1, 81-2, 81-3, 81-4, 107, 107-2, 107-2, 107-3, 107-4, 107-5, 107-6, 107-7, 122, 122-1, 122-2, 124, 170, 172, 173 (motion to dismiss for lack of subject-matter jurisdiction and associated filings); *id.* at Entry Nos. 84, 85, 85-1, 85-2, 85-3, 85-4 110, 111, 120, 121, 121-1, 145, 145-1, 145-2, 146, 146-1, 151, 151-1, 151-2, 154, 154-1, 164, 164-1, 164-2, 165, 166 (motion for class certification and associated filings); *id.* at Entry Nos. 97, 98, 98-1, 98-2, 99, 108, 109, 119, 119-1, 119-2 (motion to substitute class representative and associated filings); *id.* at Entry Nos. 127, 127-1, 127-2, 127-3, 128, 128-1, 129, 130 (motion to strike expert rebuttal reports and associated filings); *id.* at Entry Nos. 133, 150, 150-1, 150-2, 150-3, 156, 156-1 (motion to exclude expert and associated filings).

[3] *See* Ex. 3, Burk Docket Sheet at Entry Nos. 38, 39, 45, 47, 50, 56, 59, 62, 76, 92, 142, 159, 162, 168, and unnumbered entries dated 07/12/2019, 09/03/2019, and 12/21/2020.

[4] *See* Ex. 3, Burk Docket Sheet at Entry No. 24.

3

Newman was one of those alleged recipients, and her telephone number was on the alleged call list that Ms. Burk's expert cited in support of the class certification motion.

Then on September 20, 2021, all of the parties' efforts and the court's attention culminated with an order denying class certification because individualized inquiries would predominate if a class was certified. *See Burk*, 2021 WL 4267146, at *1. In reaching that conclusion, Judge Hanks focused on Direct Energy's consent defense, explaining that "the feasibility of determining the existence or absence of consent with class-wide proof" was one of "the pivotal issues highlighted by the record accompanying the parties' class certification briefs." *Id.* Upon reviewing Direct Energy's evidence in support of its consent defense and Ms. Burk's response to that evidence, Judge Hanks found that "individualized, fact-intensive disputes about consent . . . permeate[d] the record" such that Ms. Burk could not "show how the Court can use class-wide proof to determine the existence or absence of consent." *Id.* at *5. In light of Ms. Burk's failure to satisfy Rule 23(b)(3)'s predominance requirement, Judge Hanks denied class certification. *Id.* at *6.

**B.    Ms. Newman's lawyers try again, changing nothing but the name on the caption.**

Four days later, this case was filed under Ms. Newman's name by Ms. Burk's lawyers. *Compare* Compl. at p. 10, ECF No. 1 (listing Ms. Newman's counsel from the firms of Mason Lietz & Klinger LLP and Lieff Cabraser Heimann & Bernstein), *with* Ex. 3, Burk Docket Sheet at pp. 1–2 (listing the same firms—and several of the same attorneys—as Ms. Burk's counsel). Although Ms. Newman's complaint omits the autodialer claims that Ms. Burk abandoned[5] and makes slightly different allegations about the named plaintiff's individual experience,[6] the causes

---

[5] *See supra* n.1.
[6] *Compare* Compl. at ¶¶ 15–16, ECF No. 1 (describing the call Ms. Newman allegedly received) alleged calles fromcounsel from the firms of Mason Lietz & Klinger LLP and Lief Cabraser Heimann & Bernstein), *with* Ex. 1, Burk Compl. at ¶¶ 21–23.

4

of action and requested relief are identical. *Compare* Compl. at ¶¶ 37–44, ECF No. 1 (Ms. Newman's claims), *and id.* at p. 9 (Ms. Newman's prayer for relief), *with* Ex. 1, Burk Compl. at ¶¶ 47–54 (Ms. Burk's claims), *and id.* at pp. 13–14 (Ms. Burk's prayer for relief). Indeed, aside from deleting a few references to a subclass, Ms. Newman's claims and prayer are not merely similar, but perfectly identical to those in *Burk*. *Id.*

Likewise, Ms. Newman's proposed class definition is a carbon copy of Ms. Burk's, with the only difference being that Ms. Burk's putative "national class" drew from the entire United States, Ex. 1, Burk Compl. at ¶¶ 4, 35, while Ms. Newman's "national class" draws from "Direct Energy's Northeast region," Compl. at ¶ 26, ECF No. 1. To illustrate, here is the class definition from this case with underlines to language that was not copied directly from *Burk*:

**Newman Class Definition**

All persons in the [*sic*[7]] <u>Direct Energy's Northeast region</u> to whom Defendant placed an artificial or prerecorded voice call, and who did not provide <u>to Defendant</u> the cellular phone number called, from four years prior to the date of this complaint through the date of class certification.[8]

Thus, in every way that matters, Ms. Newman's class allegations are the same ones that already failed in *Burk*.

To be clear, Direct Energy argued throughout the *Burk* case that its scope should be limited to calls made as part of a telemarketing campaign to Texas customers like Ms. Burk. But her counsel refused to limit the class to Texas, making the strategic decision to instead seek certification of a broad nationwide class that included Ms. Newman. And, at their request, Judge Hanks ruled on that proposed nationwide class definition. *See Burk*, 2021 WL 4267146, at *1.

---

[7] The out-of-place article "the" in Ms. Newman's class definition is leftover from the class definition that her counsel copied-and-pasted from the *Burk* complaint.

[8] Compl. at ¶ 26, ECF No. 1.

5

Still, this case is not identical to *Burk* in all respects. The substantive allegations are the same, but the jurisdictional allegations are not. *Burk* was filed in a court that could exercise general personal jurisdiction over Direct Energy, so that complaint's jurisdictional allegations[9] focused on Direct Energy's Texas citizenship. *See* Ex. 1, Burk Compl. at ¶ 6 (alleging Direct Energy has "headquarters in Houston"); Compl. ¶ 9, ECF No. 1 (same). Ms. Newman cannot do the same here, so her complaint relies on the single call Direct Energy allegedly made to her in Maryland[10] to attempt to establish specific personal jurisdiction over the claims of the entire putative class—even those persons who reside outside Maryland. *See* Compl. ¶ 6, ECF No. 1.

### III.  STANDARD OF REVIEW: THE COURT HAS AUTHORITY TO STRIKE DEFICIENT CLASS ALLEGATIONS AT THE PLEADINGS STAGE PURSUANT TO RULE 12 OR RULE 23.

Before turning to the merits of Direct Energy's motion, the Court will need to decide whether Rule 12 or Rule 23 provides the appropriate procedural framework for challenges to class allegations at the pleadings stage. The Fourth Circuit has not yet expressed an opinion on which Rule governs and courts across the country have reached differing conclusions.

According to some judges, Direct Energy's motion should be decided under Rule 12, with Rule 12(f) providing the standard for Direct Energy's comity argument, and Rule 12(b)(2) or Rule 12(f) governing Direct Energy's objection to personal jurisdiction. *See, e.g.*, *Moser v. Benefytt, Inc.*, 8 F.4th 872, 880 (9th Cir. 2021) (Cardone J., dissenting) (arguing that "a personal jurisdiction challenge" to the claims of non-resident class members "can only be raised by motion under Rule 12" (cleaned up)); *Mussat v. IQVIA, Inc.*, No. 17 C 8841, 2018 WL 5311903, at *2 (N.D. Ill. Oct.

---

[9] The *Burk* complaint also made a vague reference to unspecified "conduct" that allegedly "occurred in, among other locations, Texas," Ex. 1, Burk Compl. at ¶ 6, but it offered no reason to think that unspecified conduct justified personal jurisdiction.

[10] As with the *Burk* complaint, Ms. Newman's complaint vaguely alludes to other unspecified conduct that occurred in Maryland. *See* Compl. at ¶ 6, ECF No.1.

6

26, 2018) (considering a similar challenge under Rule 12(f)), *rev'd and remanded*, 953 F.3d 441 (7th Cir. 2020). Under Rule 12(f), the Court should strike Ms. Newman's comity-barred and jurisdictionally-barred class allegations if it concludes they are "immaterial" to any claims that are properly before the Court. Fed. R. Civ. P. 12(f). Under Rule 12(b)(2), it should dismiss the class allegations for lack of personal jurisdiction unless Ms. Newman makes "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge," *see Johnson-Howard v. AECOM Special Missions Servs., Inc.*, 434 F. Supp. 3d 359, 365 (D. Md. 2020).

Other courts have concluded that Rule 12 is not an appropriate vehicle to challenge deficient class allegations. *See, e.g.*, *Moser*, 8 F.4th at 877 (claims of "unnamed putative class members" cannot be dismissed under Rule 12(b)(2) because they are "not yet parties to the case" at the pleadings stage). This Court has endorsed that view in the context of a motion to strike class allegations on subject matter jurisdiction grounds, noting that "courts generally have not used doctrine applicable to traditional uses of Rule 12(f) in addressing motions to strike class allegations." *Williams v. Potomac Fam. Dining Grp. Operating Co., LLC, No.* GJH-19-1780, 2019 WL 5309628, at *4 n.5 (D. Md. Oct. 21, 2019) (Hazel, J.). If the Court takes the same approach here with Direct Energy's comity and personal jurisdiction arguments, then Direct Energy's motion should be judged by the standard applicable to a motion to strike under under Rule 23(d)(1)(D). *See* Fed. R. Civ. P. 23(d)(1)(D) (authorizing courts to "issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly"). As this Court has recognized, that Rule can be invoked at the pleadings stage "when it is apparent from the face of the complaint that 'the requirements for maintaining a class action cannot be met.'" *Williams*, 2019 WL 5309628, at *5; *see also Lyngaas v. Ag*, 992 F.3d 412, 445 (6th Cir. 2021) (Thapar J., dissenting in part) ("[I]f a company believes

7

that a court would lack personal jurisdiction for the claims of out-of-state members of the putative class, the proper procedural move is to file a motion to strike the nationwide class allegations" under Rule 23(d)(1)(D).). When a party moves under Rule 23(d)(1)(D) at the pleadings stage, the Court's analysis is guided by "the familiar standard of review for motions to dismiss under Rule 12(b)(6)"—the Court accepts "all well-pled facts as true," but it "need not, however, accept unsupported legal conclusions," "legal conclusions couched as factual allegations," or "conclusory factual allegations devoid of any reference to actual events." *Williams*, 2019 WL 5309628, at *5.

Because there is a split of authority as to the appropriate procedural vehicle for Direct Energy's arguments, this motion is made under both Rule 12 and Rule 23. And as discussed below, Ms. Newman's class allegations fail no matter which framework the Court employs.

### IV.     ARGUMENT: MS. NEWMAN'S CLASS ALLEGATIONS ARE FATALLY DEFICIENT.

**A.     Comity: The Court should strike Ms. Newman's class allegations pursuant to the Supreme Court's decision in *Smith v. Bayer*.**

"The doctrine of comity instructs federal judges to avoid stepping on each other's toes when parallel suits are pending in different courts." *In re Naranjo*, 768 F.3d 332, 348 (4th Cir. 2014) (internal citations omitted). The purposes of the comity doctrine are to "avoid[]an unnecessary burden on the federal judiciary and prevent[] the embarrassment of conflicting judgments." *Id.* (internal quotations omitted).

In the context of class actions, both the Supreme Court and the Fourth Circuit recognize that the comity doctrine extends to "class certification decisions" rendered by other district courts. *See Naranjo*, 768 F.3d at 348 (quoting *Smith v. Bayer Corp.*, 564 U.S. 299, 317 (2011)). This application of the doctrine is necessary to address "policy concerns relating to use of the class action device" and to avoid giving class counsel unlimited opportunities to "try to certify the same class by the simple expedient of changing the named plaintiff in the caption of the complaint."

8

*Smith*, 564 U.S. at 316 (internal quotations omitted). Thus, whenever a district court is faced with a putative class that another judge already declined to certify, the Supreme Court "expect[s]" the second court "to apply principles of comity to" afford respect to the first court's "class certification decision[]." *Id.* at 317.

The District of Oregon honored the Supreme Court's expectation by applying comity principles when presented with circumstances nearly identical to those at issue in this case: a TCPA class action that involved an "effort by plaintiffs' counsel to make an end-run around [an] adverse ruling by attempting to certify the same classes here with different class representatives." *Ott v. Mortg. Invs. Corp. of Ohio*, 65 F. Supp. 3d 1046, 1068 (D. Or. 2014). In *Ott*, as here, the defendant asked the district court to strike a TCPA plaintiff's class allegations[11] based on another court's previous decision to deny certification of the same class. In granting that motion to strike, the *Ott* court noted that the defendant's evidence of consent in the first action came "from multiple sources," and there was "no reason for this court to believe that [the defendant's] evidence [would] differ in [the second] action." *Id.* at 1067. That is precisely the kind of consent evidence that defeated predominance in *Burk*. *See Burk*, 2021 WL 4267146, at *6 ("the record in [*Burk*]" contained varied evidence from multiple different "lead sources used to obtain consent"). Ms. Newman cannot offer any reason to think Direct Energy's consent evidence will be different in this case.

---

[11] The *Ott* plaintiff sought to represent two additional classes that were not subject to comity principles. The Court referred to the three classes as the the "Cell Phone Class," the "Internal-Do-Not-Call Class," and the "National Do-Not-Call Class." *Ott*, 65 F. Supp. 3d at 1061–62. Only the Internal-Do-Not-Call Class raised issues of comity, as that is the only class that the previous court declined to certify on a basis that was disputed in both cases. *See id.* at 1064 (noting that the previous decision "did not address the Cell Phone Class" and "ruled in favor of plaintiffs on the FRCP 23(b) issue" of predominance "for the National Do–Not–Call Class"); *id.* (noting that the *Ott* defendant did not challenge numerosity, which was the basis on which the previous court denied certification of the National Do-Not-Call Class).

The District of Colorado also struck deficient class allegations when a plaintiff pleaded claims on behalf of a statewide class that was "virtually identical" to a nationwide class that was previously denied certification. *See Edwards v. Zenimax Media, Inc.*, No. 12-CV-00411-WYD-KLM, 2012 WL 4378219, at *3 (D. Colo. Sept. 25, 2012). The decisions in *Ott*, *Zenimax*, and other federal cases[12] show that the Supreme Court's expectation in *Smith* was justified: the principle of comity both can and does prevent "a world of serial relitigation of class certification" decisions. *Smith*, 564 U.S. at 316.

This Court should also fulfill the Supreme Court's expectation by affording comity to the denial of class certification in *Burk*. There can be no doubt that the two cases involve a "common dispute" within the meaning of *Smith*: Ms. Newman is a member of the nationwide class that was denied certification in *Burk*;[13] she is represented by the same lawyers who represented the putative class in *Burk*;[14] her complaint's claims and prayer for relief are copied and pasted from the ones that failed in *Burk*;[15] and her proposed class definition is simply a subset of the class definition that was denied certification in *Burk*.[16] And plainly, if the proposed class in *Burk* had been certified, this case would not exist. As in *Ott*, Ms. Newman's complaint seeks an improper second chance to certify a class that cannot be certified in light of a previous court's finding "that the issue of consent cannot be resolved on a classwide basis" because the defendant had "obtained consent from multiple sources." *Ott*, 65 F. Supp. 3d at 1067; *see also Burk*, 2021 WL 4267146, at *4

---

[12] See, e.g., *Baker v. Home Depot USA, Inc.*, No. 11 C 6768, 2013 WL 271666, at *5 (N.D. Ill. Jan. 24, 2013) (applying the doctrine of comity and striking class allegations that were "materially identical" to those in prior cases that denied class certification); *McCabe v. Lifetime Ent. Servs.* (E.D.N.Y. Jan. 4, 2018) (invoking the doctrine of comity and dismissing class claims).

[13] *See* Ex. 1, Burk Compl. at ¶ 35; Compl. at ¶¶ 14–15, ECF No. 1.

[14] *Compare* Compl. at p. 10, ECF No. 1, *with* Ex. 3, Burk Docket Sheet at pp. 1–2.

[15] *Compare* Compl. at ¶¶ 37–44, p.9, ECF. No. 1, *with* Ex. 1, Burk Compl. at ¶¶ 47–54, pp. 13–14.

[16] *Compare* Compl. at ¶ 26, ECF No. 1, Ex. ,*with* Ex.1, Burk Compl. at ¶, 35.

(noting that "each side's evidence regarding consent is extremely individualized, vehemently contested, and complex enough to require expert testimony," and that Direct Energy's evidence of consent "include[d] a nonexclusive list of three different companies and nine different landing pages"). And as in *Ott*, "[t]here is no reason for this [C]ourt to believe that [the parties'] evidence will differ in this action." *Id.*

Given that the class Ms. Newman seeks to pursue here is entirely subsumed by the one that was denied certification in *Burk*, the "principles of comity . . . preclude a finding of [Rule 23(b)(3) predominance]" for the class Ms. Newman seeks to certify. *Ott*, 65 F. Supp. 3d at 1067. Accordingly, the Court should strike Ms. Newman's class allegations rather than endorsing the "tremendous waste of judicial [and party] resources" necessary to "entertain a putative class action identical to a previously rejected class, where the new complaint contains no additional evidence or allegations proffered to overcome the deficiencies identified by the prior court." *McCabe*, 2018 WL 1521860, at *17. To do otherwise after the *Burk* court devoted such an immense amount of time and effort to that case would cause precisely the kind of "unnecessary burden on the federal judiciary and . . . the embarrassment of conflicting judgments" that the doctrine of comity is meant to avoid. *Naranjo*, 768 F.3d at 348.

**B.     Personal Jurisdiction: Under the Supreme Court's decisions in *Bristol-Myers Squibb* and *TransUnion*, the Court lacks personal jurisdiction for the multistate class claims.**

Rule 8 demands that Ms. Newman's complaint include "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). Although Ms. Newman has arguably done so for her individual claims, recent Supreme Court caselaw makes clear that her allegations cannot justify the exercise of personal jurisdiction over Direct Energy with respect to a multistate class. Rather, as discussed below, Ms. Newman is required to establish a basis for personal jurisdiction for the claims of every unnamed member of the putative class, and she cannot make

11

that showing for the national class described in her complaint.

### 1. Ms. Newman must establish a basis for personal jurisdiction for the claims of every unnamed class member.

Under long-settled law, "a federal court must have personal jurisdiction" over a party before it can "enter a judgment" adjudicating that party's rights. *Johnson-Howard*, 434 F. Supp. 3d at 369 (cleaned up). And as the Supreme Court made clear with its 2017 decision in *Bristol-Myers Squibb*, the "settled principles regarding specific jurisdiction" are not "relaxed" when plaintiffs who cannot establish personal jurisdiction join their claims with those of other plaintiffs who can. *Bristol-Myers Squibb*, 137 S. Ct. at 1783. Thus, if a plaintiff cannot establish personal jurisdiction in a forum, the "mere fact that *other* plaintiffs" can properly bring their claims in a forum has no impact at all on the jurisdictional calculus. *Id.* at 1781 (emphasis in original). In such cases, the court lacks jurisdiction over the claims of plaintiffs who cannot establish jurisdiction, and that "remains true even when third parties . . . can" invoke the court's jurisdiction over similar claims. *Id.* at 1781.

The Fourth Circuit has not yet considered how the *Bristol-Myers Squibb* decision applies to federal class actions, and the federal courts to address it have not come to a consensus. In one camp, there are courts that think *Bristol-Myers Squibb* does not apply to unnamed class members in federal class actions. *See, e.g.*, *Lyngaas*, 992 F.3d at 434–45 (citing district courts and one other circuit court[17] that takes this view). This view is best articulated in the Sixth Circuit's decision in *Lyngaas*, which followed the Seventh Circuit holding that "the unique posture of a class action"

---

[17] Two other circuit courts have been asked to decide whether *Bristol-Myers Squibb* applies to unnamed plaintiff's in federal class actions, but both left the issue open for the district court to decide in the first instance on remand. *See Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 249 n.7 (5th Cir. 2020) (noting that the district court failed to address "address the merits of [a defendant's] *Bristol-Myers* objection to class certification" because it "it [erroneously] found the issue waived," and leaving that unresolved question "for the district court on remand"); *Moser*, 8 F.4th at 879 (same).

12

permits a deviation from the standard "jurisdictional inquiry" set forth in *Bristol-Myers Squibb*. *See id.* at 436. In reaching that conclusion, both the Sixth and the Seventh Circuits drew an analogy between subject-matter jurisdiction and personal jurisdiction, reasoning that there is "no reason why personal jurisdiction should be treated any differently from subject-matter jurisdiction . . . : the named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so." *Id.* at 437–38 (quoting *Mussat*, 953 F.3d at 447).

In a thoroughly reasoned dissent, Judge Thapar of the Sixth Circuit identified two fatal flaws of the *Lyngaas* majority's approach. *See Lyngaas*, 992 F.3d at 438–45.

First, the majority drew a mistaken "distinction between federal and state courts" based on hypothetical differences between the Fourteenth Amendment (which limits personal jurisdiction in state courts) and the Fifth Amendment (which limits personal jurisdiction in federal courts). *See id.* at 434 (distinguishing *Bristol-Myers Squibb* on the basis "that the decision did not address 'whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court.'" (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1784)). As Judge Thapar explained, that was a mistake because federal courts are required by rule to "follow state law in determining the bounds of their jurisdiction over persons," *id.* at 439 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) and citing Fed. R. Civ. P. 4(k)(1)(A)), which means "federal district court[s] must respect the due process principles that would apply in state court." *Id.* at 439. In the Fourth Circuit, at least, Judge Thapar's side of this argument is supported by binding precedent. *See UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (holding that "Rule 4(k)(1)" only permits district courts to "exercise personal jurisdiction" if doing so is "consistent with the due process clause of the **Fourteenth** Amendment" (emphasis added)). In

13

other words, in the Fourth Circuit, it is settled that federal courts are generally required to respect the due process rules that would apply in state court. *Id.*

The second fatal flaw with the *Lyngaas* majority opinion rested with its attempt to draw an analogy between subject-matter and personal-jurisdiction. As Judge Thapar explained, that analogy incorrectly assumed that "courts may overlook absent class members for the purposes of subject matter jurisdiction." *Lyngaas*, 992 F.3d at 443. In truth, the class action device only permits courts to overlook **statutory** jurisdictional prerequisites like amount-in-controversy requirements, but not **constitutional** prerequisites like Article III's limits on subject-matter jurisdiction or the Fourteenth Amendment's limits on personal jurisdiction. *Id*. Thus, "invoking [the class action] device neither excuses nor satisfies the personal jurisdiction requirement" with respect to the claims of unnamed class members. *Id.*

On this point, the Supreme Court's recent decision in *TransUnion* validated Judge Thapar's dissent—and would now lead to a different result in *Lyngaas* and *Mussat*, even under those decisions' rationales. In the context of subject matter jurisdiction, *TransUnion* held that unnamed class members cannot be exempt from the Constitution's jurisdictional prerequisites because "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207–08, 210 L. Ed. 2d 568 (2021) (citation and internal quotation marks omitted). In light of that holding, Judge Thapar's dissent, the logic of the *Lyngaas* majority, and the Seventh Circuit's decision in *Mussat* all compel the application of *Bristol-Myers Squibb* to this federal class action. As those cases explained, there is "no reason why personal jurisdiction should be treated any differently from subject-matter jurisdiction." *Lyngaas*, 992 F.3d at 437–38 (quoting *Mussat*, 953 F.3d at 447). So just as absent class members must establish subject-matter jurisdiction under *TransUnion*, they must also do so

14

for personal jurisdiction under *Bristol-Myers Squibb*.

### 2. *Ms. Newman cannot plead or prove a basis for personal jurisdiction with respect to the claims of the multistate class.*

With the foregoing principles in mind, the question at this stage is whether Ms. Newman can make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *See Johnson-Howard*, 434 F. Supp. 3d at 365. With respect to her individual claims, Ms. Newman attempts to meet that burden by alleging that she "lives in this District" and that Direct Energy "sent and/or initiated unauthorized prerecorded phone calls to her." *See* Compl. ¶ 6, ECF No. 1. And while that is arguably enough for Ms. Newman's individual claims, the same cannot be said for the rest of the putative class.

Because Ms. Newman seeks to certify a "national class" that includes claims of unnamed class members from across Direct Energy's entire "Northeast region," the putative class necessarily includes individuals who do not reside in Maryland and who received calls outside the State. *See* Compl. ¶¶ 4, 26, ECF No. 1. Under *Bristol-Myers Squibb*, such claims cannot be brought in Maryland because there is no link between "[Maryland] and the . . . claims" of non-resident class members. *Bristol-Myers Squibb*, 137 S. Ct. at 1781. If Ms. Newman wants to represent a national class that includes individuals with claims based on conduct that "occurred in a different State," she may only do so in "[a] court with general jurisdiction" over Direct Energy, *id.* at 1773— i.e., the Southern District of Texas. But Ms. Newman chose not to do so for an obvious reason: to avoid again drawing Judge Hanks,[18] who denied certification in *Burk*. And "it is apparent from the face of the complaint that the [jurisdictional] requirements for maintaining a class action cannot

---

[18] Ms. Newman's desire to avoid another case in front of Judge Hanks also illustrates why the comity doctrine is necessary. There are 94 federal districts, and Ms. Newman's lawyers are not entitled to conduct "serial relitigation of class certification" in each of those districts until they eventually get a ruling they like. *See Smith*, 564 U.S. at 316.

15

be met" with respect to the class that Ms. Newman seeks to certify here. *Williams*, 2019 WL 5309628, at *5 (cleaned up). Thus, the Court should either dismiss or strike the complaint's deficient class allegations for lack of personal jurisdiction.

## IV. CONCLUSION

For the reasons set forth above the Court should dismiss or strike Ms. Newman's class allegations with prejudice.

Dated: December 3, 2021                                    Respectfully submitted,

/s/ Joseph A. Smith
Eric N. Heyer (D. Md. No. 17486)
Joseph A. Smith (D. Md. No. 19292)
THOMPSON HINE
1919 M Street, N.W., Suite 700
Washington, D.C. 20036-3537
Telephone: (202) 263-4128
eric.heyer@thompsonhine.com
joe.smith@thompsonhine.com

-and-

Michael D. Matthews, Jr., Esq.*
William B. Thomas, Esq.*
Diane S. Wizig, Esq.*
James M. Chambers, Esq.*
David L. Villarreal, Esq.*
MCDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2700
Houston, Texas 77002
Telephone: (713) 337-5580
matt.matthews@mhllp.com
william.thomas@mhllp.com
diane.wizig@mhllp.com
james.chambers@mhllp.com
david.villarreal@mhllp.com

* *pro hac vice applications forthcoming*

**ATTORNEYS FOR DEFENDANT DIRECT ENERGY, LP**

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served on all parties through their counsel of record via the Court's CM/ECF system, on December 3, 2021.

*/s/ Joseph A. Smith*
Joseph A. Smith